UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **PETER BARKOURAS,** | : | Civil Action No.: 06-366(AET) |
| Individually and on behalf of | : | |
| all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | MEMORANDUM OPINION |
| **LAURENCE A. HECKER and** | : | |
| **VCOLLECT GLOBAL, INC.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of Plaintiff Peter Barkouras ("Plaintiff") for Sanctions pursuant to Federal Rules of Civil Procedure 16(f) & 37 against Defendant vCollect Global ("vCollect") for failure to provide a current audit, as required by the Court's May 16, 2006 Pretrial Scheduling Order, and for failure to provide documentation which Plaintiff needs to determine the net worth of vCollect. VCollect and Defendant Laurence A. Hecker (collectively "Defendants") oppose the Motion. The Court entered an Order on May 16, 2006 which, in part, required both Defendants to produce certain discovery, specifically a current audit, no later than June 16, 2006. Plaintiff alleges vCollect produced an unaudited balance sheet which showed a positive net worth as of April 30, 2006 and that Defendants subsequently have provided inconsistent disclosures. The Court reviewed the written submissions of the parties and conducted oral argument on February 21, 2007. For the reasons that follow, the Court will grant

1

in part and deny in part Plaintiff's Motion for Sanctions against Defendants for failing to comply with the May 16, 2006 Pretrial Scheduling Order requiring production of certain discovery.

**I.     BACKGROUND**

**A.     Factual Background and Procedural History**

Plaintiff has brought the present action seeking money damages and declaratory relief against Defendants for allegedly violating the Fair Debt Collection Practices Act ("FDCPA") in mailing collection letters. (See Docket Entry # 14). Defendant Hecker is a practicing attorney in New Jersey who performs debt collections on behalf of Defendant vCollect. (See Docket Entry # 6). VCollect acquires debts already in default and then tries to collect them. (See Docket Entry # 14). Defendants mailed Plaintiff two Demand Letters seeking to collect on a debt. Id. at 2. Plaintiff alleged that these Defendants violated several aspects of the FDCPA by acting "in a false, deceptive, or misleading and unfair manner" to Plaintiff. (See Docket Entry # 1). Plaintiff also alleged that Defendants misled Plaintiff "by placing the debt collection communications on Hecker letterhead" even though the Defendants had no intention of taking legal action and the Plaintiff's file was not reviewed by an attorney. Id. at ¶ 56, 57. Defendants admitted to sending identical form letters to thousands of people similarly situated to Plaintiff. (See Docket Entry # 14).

Plaintiff subsequently filed a Motion for Class Certification under Federal Rule of Civil Procedure 16 on October 27, 2006. (See Docket Entry # 11, 14). In opposition to this Motion, Defendants' main argument was that the class action was inferior to individual suits since class members would receive only a *de minimis* recovery at best due to Defendants' negative net worth. (See Docket Entry # 14). The Court, in a decision by Judge Thompson, held that

Defendants were trying to use their negative net worth as an attempt "to avoid suits altogether." Id. at 6.  The Court granted Plaintiff's Motion for Class Certification on December 8, 2006.  Id. at 8.

Plaintiff filed a Complaint-Class Action against Defendants on January 30, 2006.  (Pl.'s Br. at 1).  Defendants Hecker and vCollect filed an Answer on March 31, 2006.  (See Docket Entry # 6).  The Court entered a May 16, 2006 Pretrial Scheduling Order, which set forth a schedule for discovery, a settlement conference call, and the Motion for Class Certification.  (Pl.'s Br. at 1).

The Court's May 16, 2006 Pretrial Scheduling Order instructed Defendants to "produce current audit no later than June 16, 2006."  (See Docket Entry #8).  In response, vCollect produced (1) an Affidavit ("First Affidavit") signed by Lawrence Weil ("Mr. Weil") dated June 16, 2006, (2) a "Commitment Letter" and "Amended and Restated Loan Agreement," (3) a document entitled "vCollect Income Statement for the Twelve Months Ending December 31, 2005" ("2005 Income Statement") that allegedly showed profits of $1,641,397.53 for December 2005, and (4) a Second Affidavit ("Second Affidavit") by Mr. Weil alleging the unreliability of the 2005 Income Statement, particularly in regards to December.  (Pl.'s Br. at 2, 4, 6).

On December 18, 2006, Plaintiff filed a Motion for Sanctions pursuant to Rule 16 for Defendants' failure to comply with the May 16, 2006 Pretrial Scheduling Order and Rule 37 for false and misleading disclosures during discovery.  (See Docket Entry # 15).  Plaintiff seeks both monetary damages and equitable relief based on its effort to obtain information about vCollect's net worth that Defendants were ordered to produce by the Court.  (Pl.'s Br. at 1).

Plaintiff alleges that vCollect failed to provide an audited balance sheet by June 16, 2006

3

and instead produced an unaudited balance sheet which showed a positive net worth as of April 30, 2006.  Id. at 2.  Plaintiff further alleges that the balance sheet did not contain either the value of vCollect's portfolio of debt or the value of any goodwill.  Id.  Plaintiff contends that Mr. Weil did not have sufficient knowledge to support the information in the First Affidavit and that many of the statements he gave in the First Affidavit were inconsistent or false including the information regarding a six million dollar loan that was owed by vCollect.  Id. at 3.

Plaintiff also contests other documents provided by vCollect in support of its claim that it owed six million dollars which did not appear on the balance sheet.  Id.  Plaintiff contends that both the Commitment Letter and the Amended and Restated Loan Agreement contained contradictory information from the First Affidavit and that neither document provided any substantial evidence of the loan.  Id. at 4.  Plaintiff asserts that the Commitment Letter allegedly listed the loan amount as fifteen million dollars instead of six million and it referred to a loan between "Cordell Funding LLLP" and "Debt Holdings, Inc.," not a business loan for vCollect Global or a loan by Cordell Consultants, Inc., as stated in the First Affidavit.  Id. at 6.

Plaintiff further contends that the 2005 Income Statement contradicted all the former claims of vCollect not earning a profit.  Id.  Plaintiff notes that the Second Affidavit contained information about an "erroneous entry of an unrealized sale of a debt portfolio."  Id. at 7.  Plaintiff alleges that there was no such line item as "sale of portfolio debt" identified in the income statement.  Id.  Plaintiff further alleges that the Second Affidavit contained information about entries that did not exist in vCollect's income statement.  Id.  Plaintiff's argument is that vCollect did not provide a substantial or even clear reason why the document purporting to be the 2005 Income Statement was unreliable.  Id.  Plaintiff further argues that vCollect did not give any

legitimate reason for failing to provide the actual 2005 Income Statement, instead providing the aforementioned document that "purported to be the 2005 Income Statement." Id. Plaintiff alleges that the lack of an audited balance sheet along with documents containing contradictory information has caused Plaintiff to spend money and resources in an attempt to obtain information regarding vCollect's clear net worth. Id. at 8.

Defendants allege in opposition that Plaintiff's motion is being filed in order to circumvent the potential limitations imposed by FDCPA on recovery of reasonable fees based on the success of a prevailing party. (Defs.' Opp. Br. at 2). Defendants cite the FDCPA, noting that if Plaintiff was successful on a class basis, the class would recover no money from vCollect and very little from Defendant Hecker due to vCollect's negative net worth. Id.

Defendants further contend that Plaintiff is engaging in unnecessary discovery pursuits and that there is sufficient evidence to show that vCollect does not have sufficient net worth. Id. at 3. Defendants argue that the First Affidavit, signed by Mr. Weil, is supported by his own deposition testimony and further corroborates vCollect's insufficient net worth. Id. VCollect argues that ultimately, this will not provide any statutory recovery for the class. Id. at 4.

Defendants further argue that their inability to comply with the May 16, 2006 Pretrial Scheduling Order was neither intentional nor negligent. Id. at 3. Defendants argue they did not do anything "that unreasonably interfered with the expeditious management of this litigation." Id. at 4. Defendants also argue that they made a good faith effort to comply with the May 16, 2006 Pretrial Scheduling Order after the conference and that they notified Plaintiff that vCollect could not produce a proper GAAP-compliant audit for 2005. Id. at 2. VCollect contends it was not able to produce a proper GAAP-complaint audit since it did not have possession, custody, or

control of the financial records needed to do the audit.  Id. at 3.

Defendants claim that a person named Mr. Dalmia used vCollect and other companies to funnel defalcated funds for criminal purposes.  Id. at 15.  Defendants also contend that Allserve, the firm which was supposed to prepare the audit for vCollect, was indicted for theft of funds from various corporations, including vCollect.  Id.  Defendants claim that counsel for Plaintiff was notified by counsel for vCollect as soon as Defendants were made aware of Allserve's indictment.  Id.  Defendants further contend that they exercised due diligence by retaining an accounting firm to audit the limited financial records vCollect had for fiscal year 2005 in order to meet the May 16, 2006 Pretrial Scheduling Order, but that the audit could not be conducted due to insufficient financial records.  Id. at 16.  Defendants ultimately argue that they did everything they could to comply with the May 16, 2006 Pretrial Scheduling Order but were unable to produce a sufficient audit balance sheet through no fault or negligence of their own.  Id. at 19.

## II.   DISCUSSION

### A.   Rules 16(f) and 37

Federal Rule of Civil Procedure 16 provides, in part:

> If a party or party's attorney fails to obey a scheduling or pretrial order . . . or fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto are just . . . the judge shall require the party or attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance . . . *unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust*.

FED. R. CIV. P. 16(f) (emphasis added).  Rule 16(f) mandates that parties must obey all scheduling and other pretrial orders.  Therefore, the court may impose a sanction on a party for failure to comply with any scheduling or pretrial order.  The court is given discretion as to how

it may sanction a noncompliant party, but only to the extent that it is just.  This rule recognizes that a court may not impose sanctions for failure to comply if the non-complying party has substantial justification for not meeting the order.  Accordingly, the court's decision to sanction a party for failure to comply constitutes exercise of its discretion.  <u>Vineland Constr. Co. v. Universal-Rundle Corp.</u>, 1996 U.S. Dist. LEXIS 22386, at * 11 (D.N.J. 1996).

In addition, Rule 37(b) provides various sanctions for failure to comply with an order including the payment of reasonable fees and attorney's expenses by the non-compliant party or counsel for that party.  FED. R. CIV. P. 37(b)(2).  The court is expected to impose an appropriate sanction that meets the circumstances of the case.  <u>Vineland</u>, 1996 U.S. Dist. LEXIS 22386, at * 27.  Taken together, both rules provide that when a party fails to obey a court order, the court may make such orders as are just and enter the sanctions set out in Rule 37(b).  The purpose of both rules together is to punish litigants and attorneys for their noncompliance in discovery and pretrial orders, but the court must keep considerations of justice in mind when imposing sanctions for these violations.  <u>Resolution Trust Corp. v. Williams</u>, 165 F.R.D. 639 (D. Kan. 1996).

The main issue before the Court is whether to sanction Defendants for failing to comply with the May 16, 2006 Pretrial Scheduling Order by failing to produce an audited balance sheet that accurately showed net worth by June 16, 2006.  Defendants do not deny that they were unable to produce an audited balance sheet, but argue that circumstances beyond their control prevented them from complying with the May 16, 2006 Pretrial Scheduling Order.  The Court then has to consider whether this argument demonstrates substantial justification.  The Court, in deciding whether to impose sanctions, must consider whether this will serve the interests of

justice. Id. at 646.

In essence, Defendants admit to violating the May 16, 2006 Pretrial Scheduling Order by not producing the audited balance sheet. But they argue that it is not their fault because records were lost or destroyed and no accountant could establish a base from which to prepare an audited balance sheet. Next, Defendants argued to Judge Thompson in opposition to the Class Certification Motion that the unaudited balance sheet which shows a positive net worth is not accurate. Finally, they argue here (and did before Judge Thompson) that certain isolated and uncorroborated records and witness statements establish a negative net worth. In other words, Defendants sought to "have [their] cake and eat it too." See MIGUEL DE CERVANTES SAAVEDRA, DON QUIXOTE, PART II, CHAP. XLIII (1615).

The Court finds that Plaintiff was required to expend costs to decipher this financial quagmire for purposes of the Class Certification Motion and to disprove the Defendants' "house of cards" negative net worth argument, and, at least to this point, the Class has succeeded.

**1. Whether Defendants Violated the May 16, 2006 Pretrial Scheduling Order**

Plaintiff relies on the holdings in Resolution Trust Corp v. Williams, 165 F.R.D. 639 (D. Kan. 1996), Empire Inc. v. Wal-Mart Stores, Inc., 188 F.R.D. 478 (D. Ky. 1999), and Rice v. Barnes, 201 F.R.D. 549 (D. Ala. 2001), to argue that Defendants' conduct in failing to comply with the May 16, 2006 Pretrial Scheduling Order does not have to be intentional in order to be sanctioned. Under Rule 16, a party's failure to comply with a pretrial order does not have to be purposeful or done in bad faith; unexcused failure to comply may result in sanctions on the violating party. Empire Inc., 188 F.R.D. at 480. The non-complying party's handling of a case

8

which causes unreasonable delays and interferes with the expeditious management of trial preparation may serve as a basis for sanctions. Resolution, 165 F.R.D. at 643. The court is given broad discretion to impose these sanctions when necessary to insure not only that the parties and their counsel refrain from contumacious behavior but also that the cases are prepared for trial in a sound and efficient manner. Parties must be aware that calendars are often crowded and the pretrial orders have to be met by the date scheduled, not at the convenience of the parties. Rice, 201 F.R.D. at 551.

Defense counsel conceded at oral argument that Defendants violated the May 16, 2006 Pretrial Scheduling Order by failing to produce an audited balance sheet by June 16, 2006. Therefore, because Defendants admittedly violated the May 16, 2006 Pretrial Scheduling Order, the Court will determine whether Defendants have substantial justification for their violation.

### 2. Whether Defendants Have Demonstrated that Non-Compliance was Substantially Justified

The Third Circuit has advised that although a Court can use its discretion to decide what sanctions to impose, it may not impose sanctions on the party if the party had substantial justification for failing to comply with a pretrial or scheduling order. Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990). Imposing sanctions for unjustified failure to comply with the court's pretrial order is entirely consistent with the spirit of Rule 16. Id. at 1126. Defendants have the burden of proving they have substantial justification for failing to meet a pretrial order.

In the present matter, Defendants offer three distinct arguments as to their justification for violating the Court's May 16, 2006 Pretrial Scheduling Order. Defendants first claim that

their inability to produce the audited balance sheet measuring company net worth was due to not having the care, control, or custody of the proper financial documents. Defendants claim that the parent company Allserve was supposed to prepare the audit for vCollect but was indicted for theft of funds from various corporations including vCollect. Defendants, therefore, claim that they did not have the proper documents with which to conduct the audit.

      The Court is aware of the unfortunate situation in which Defendants were placed regarding the indictment of the parent company Allserve and the defalcation of vCollect's funds by Mr. Dalmia and his co-conspirators which made it more difficult for them to comply precisely with the May 16, 2006 Pretrial Scheduling Order. However, the Court finds that Defendants' inability to locate missing documents does not provide substantial justification for failing to meet the May 16, 2006 Pretrial Scheduling Order. Simply stating that financial records are not available and, therefore, no certified public accountant can provide an audited balance sheet does not demonstrate substantial justification without some effort on the part of Defendants to reconstruct a baseline and provide a reliable cost basis or other financial time-line through other means. Instead of trying to rectify the situation, Defendants place blame on the parent company in an attempt to substantially justify its inability to comply with the May 16, 2006 Pretrial Scheduling Order. Therefore, Defendants have not provided substantial justification for their failure to comply with the May 16, 2006 Pretrial Scheduling Order by claiming they do not have the requisite financial documents.

      Defendants' second argument is that despite having an unaudited balance sheet showing a positive net worth, they took the steps they needed to try and remedy the situation by providing whatever documents they had available. But, as the Court has already indicated,

Defendants disingenuously utilized these inconsistent documents to assert negative net worth. The Court finds that the combination of inconsistent documents and testimony presented by Defendants in the present matter has burdened the discovery process for Plaintiff.

Plaintiff argues that several of the documents and the deposition of Mr. Weil provided by Defendants were inconsistent and did not satisfy Plaintiff's discovery requests. Under Federal Rule of Civil Procedure 37(d), a movant must in good faith, confer with the other party regarding its failure to answer before seeking court intervention. Plaintiff mentioned that it participated in two conference calls with the Court but was unable to get the answers it needed to its discovery requests. (Pl.'s Br. at 11). As further evidence of inconsistency in Defendants' documents, Plaintiff has provided exhibits of a deposition of Mr. Weil and the First Affidavit he signed. During the deposition, Mr. Weil provided either vague or uncertain answers to the questions which were based on information in the First Affidavit. Essentially, Mr. Weil did not seem to have any basis for his knowledge regarding the six million dollar loan on the First Affidavit and many of the answers he did provide were based on assumptions. Reportedly, Mr. Weil was represented by Defendants as the person with the most knowledge regarding vCollect's net worth.

The Court finds that Plaintiff has proven inconsistency exists between the First Affidavit and Mr. Weil's testimony. In particular, the Court finds that the person who purportedly had the most knowledge regarding vCollect's net worth was unable to provide information to corroborate the First Affidavit he signed and the overall financial health of the company. This has forced Plaintiff to engage in a hunt for financial documents that are likely unavailable as the result of parent company Allserve's indictment. Defendants argue that Mr. Weil provided

answers to the best of his knowledge. However, when Mr. Weil was asked even basic questions about the loan on the First Affidavit, he did not seem to know the answers. Therefore, the Court finds that for Defendants to offer Mr. Weil as an expert on vCollect's financial status–when in essence, he could not provide a basis for his knowledge besides "what he was told" by others–misled the Plaintiff and hindered its ability to conduct proper discovery.

Further, in their response opposing the motion for sanctions, Defendants admitted to some of the inconsistencies in the documents they presented to Plaintiff. In dispute is the amount of the loan itself, with Defendants admitting that the unsigned Guaranty of Payment by vCollect was for five million dollars. (See Docket Entry # 16). This amount contravenes the First Affidavit listing a loan for six million dollars and the Commitment Letter listing a loan for fifteen million dollars, indicating some inconsistency in what vCollect owed. Therefore, the Court finds that Defendants' conduct has caused delay and expense in Plaintiff getting an accurate net worth for vCollect. Instead of making it easier for Plaintiff, Defendants provided inconsistent documents thereby frustrating the discovery process for Plaintiff.

Defendants finally argue that Plaintiff was notified about vCollect's negative net worth and that Plaintiff elected to pursue unreasonable discovery at its own risk. (See Docket Entry # 16). While arguing against Plaintiff's Motion for Class Certification, Defendants tried to argue that vCollect's negative net worth should prevent class certification. Judge Thompson found that Defendants submitted "various disjointed documents, several stating that the methods used to assess net worth fail to comport with General Accepted Accounting Principles." (See Docket Entry # 14). Judge Thompson held in favor of Plaintiff's Motion for Class Certification and found that Defendants offered no reason to prevent class certification. Id. Judge Thompson

further held that Defendants were trying to "prevent class certification so that putative members do not discover their potential claim against Defendants." Id. Therefore, the Court finds Defendants' claim that it provided notice to Plaintiff of vCollect's negative net worth is not substantial justification for failing to meet the May 16, 2006 Pretrial Scheduling Order.

In summary, Defendants offered three arguments to demonstrate that they had substantial justification for their non-compliance. First, Defendants argued that they did not have possession of the proper documents since they were lost or stolen. Second, Defendants argued that they tried to produce the documents they did have to recreate vCollect's net worth. And finally, Defendants argued that Plaintiff was placed on notice regarding vCollect's actual net worth being negative. However, Plaintiff should not be expected to spend extra time and resources to obtain an accurate company net worth when Defendants themselves had the obligation to produce the information within the time frame of the May 16, 2006 Pretrial Scheduling Order. Therefore, the Court rejects all three arguments Defendants made claiming their failure to comply was substantially justified.

**B.     Reasonable expenses**

Under the express language in both Rule 16(f) and Rule 37(b), an award of expenses must be reasonable. The Third Circuit has instructed that monetary sanctions should relate directly to the expenses incurred due to the non-complying party's violation. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995). A Magistrate Judge has broad discretion to decide what sanctions to impose under Rule 16(f). Vineland, 1996 U.S. Dist. LEXIS 22386, at * 24. In exercising its discretion to impose sanctions, a court must order the non-complying party or counsel or both to pay reasonable fees that match the expenses incurred on the other party for

having to expend their resources. Resolution, 165 F.R.D. at 646. Taken together, Rules 16(f) and 37(b) ask that the court keep considerations of justice in mind when imposing sanctions for rule violations. Id. at 646.

Plaintiff asks for fees and costs of approximately $18,745.00. (Pl.'s Br. at 14). Defendants ask that this request for fees be denied since it is premature and in conflict with FDCPA's fee shifting provision. (Defs.' Opp. Br. at 21). Defendants argue that FDCPA provides mandatory fee shifting for a prevailing party and that if Plaintiff were to prevail on a class action claims, its recovery of attorneys' fees and costs would be limited. Id. at 2. Defendants further argue that since FDCPA caps class action recoveries at 1% of the net worth of the debt collector, and the net worth (if deemed to be positive) is around $8,416.00, the Class would be entitled to a maximum recovery of $84.00. Id. at 21.

The Court finds Defendants' FDCPA argument to be inapplicable to the present motion for sanctions pursuant to Rules 16 and 37 for failure to comply with a pretrial order. In the present matter, reasonable expenses for violating a pretrial order pursuant to Rules 16 and 37 relate to the fees and costs incurred by Plaintiff in pursuing extra discovery to determine the net worth of vCollect due to Defendants' failure to produce an audited balance sheet. Therefore, the issues of FDCPA and its class action recoveries are not pertinent here.

Defendants had the obligation to produce to Plaintiff an audited balance sheet as ordered by the Court. From this audited balance sheet, Plaintiff would have been able to discern vCollect's net worth, an important issue in the present case. The fees that this Court shall award will correspond directly with the extra fees Plaintiff spent trying to discover Defendants' net worth after Defendants failed to produce this information to Plaintiff. Therefore, the Court will

grant Plaintiff fees to reimburse its legal costs in trying to ascertain a more accurate assessment of vCollect's net worth. Accordingly, the Court will require Plaintiff to submit a revised fee petition.

**C.     Equitable Remedy**

Plaintiff also requests "equitable relief in the form of an order disallowing Defendant vCollect from opposing claims that it has a negative net worth." (Pl.'s Br. at 14). As for this equitable remedy, Defendants believe that preventing a negative net worth confirms that the Class would ultimately recover no money if class wide liability was found. However, by permitting the equitable remedy that Defendants seek, the Court would be, in essence, entering judgment for Plaintiff.

In Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863 (3d Cir. 1984), the Third Circuit provided six criteria for analyzing whether the sanction of dismissal of a party's claim for failure to comply with a discovery order is justified:

1. The extent of the party's personal responsibility;
2. The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
3. A history of dilatoriness;
4. Whether the conduct of the party or the attorney was willful or in bad faith;
5. The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
6. The meritoriousness of the claim or defense.

747 F.2d at 868. No single factor has to be satisfied in order for the Court to dismiss a claim but all six factors should be weighed to determine whether an extreme sanction of dismissal is justly merited. See Ware v. Rodale Press, Inc., 322 F.3d 218, 221-22 (3d Cir. 2003) (citing Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863 (3d Cir. 1984)) (holding that the District Court properly weighed the Poulis factors in dismissing the breach of contract claim).

Plaintiff asks that the Court prevent Defendants from claiming negative net worth at trial. Based on the six Poulis factors, the Court will deny Plaintiff's request for equitable relief in the form of estoppel. Under the first Poulis factor, Defendants were personally responsible for violating the Order. Under the second Poulis factor, Defendants' failure to comply with the Order and adequately respond to discovery was prejudicial to Plaintiff, requiring additional fees and resources spent on discovery. Under the third Poulis factor, the Court must look at Defendants' past history and whether there was any pattern of dilatoriness. In this case, there is no record of Defendants having had a past history of violating court orders. Under the fourth Poulis factor, the Court determines whether there was bad faith in violating the Order. In this case, there is no evidence that Defendants violated the Order willfully. Furthermore, the fifth Poulis factor takes into account alternative sanctions and here, the Court has already decided to grant fee sanctions against Defendants for violating the Order without substantial justification. Finally, under the sixth Poulis factor, based on the uncertainty as to net worth in discovery, the Court will assume, for purposes of this discussion, that the defense is meritorious. The first and second Poulis factors weigh against Defendants while the remaining four factors weigh in favor of Defendants. Therefore, after weighing the six Poulis factors and considering the overall importance of determining an accurate net worth for vCollect, the Court will deny Plaintiff's request for estoppel.

Overall, the Court finds that granting Plaintiff's request for an estoppel order to prevent Defendants from subsequently claiming vCollect has a negative net worth is too drastic a remedy under the circumstances. See Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3d Cir. 1977) (holding that the District Court abused its discretion in excluding

16

two of Plaintiff's witnesses from sharing testimony since less drastic sanctions could have been imposed on Plaintiff for failing to list the two witnesses on the pretrial memorandum).

Like the Plaintiff in <u>Meyers</u>, who had a bona fide excuse for not listing the two witnesses on the memorandum, here, Defendants had a reason why they could not comply precisely with the May 16, 2006 Pretrial Scheduling Order. The Plaintiff in <u>Meyers</u> did not engage in willful deception or flagrant disregard of a court order; likewise, the Defendants here did not intentionally violate the May 16, 2006 Pretrial Scheduling Order. Similar to the Court in <u>Meyers</u> which held that excluding the two witnesses would be an extreme sanction since they constitute critical evidence, here, the Court holds that the accurate determination of vCollect's net worth is critical to this case and preventing Defendants from arguing negative net value would be an extreme sanction. Therefore, the Court will deny Plaintiff's second request to preclude Defendants from claiming a negative net worth at trial.

### III.     CONCLUSION

For all the above reasons, the Court will grant Plaintiff's motion for sanctions pursuant to Rules 16 and 37 based on Defendants' failure to comply with the May 16, 2006 Pretrial Scheduling Order that required Defendants to produce a current audit no later than June 16, 2006. The Court will award Plaintiff the amount it spent on attempting to discover Defendants' net worth after the May 16, 2006 Pretrial Scheduling Order violation. The Court will deny Plaintiff's request for estoppel on Defendants from claiming that vCollect has a negative net worth because the <u>Poulis</u> factors and the holding in <u>Meyers</u> weigh against the estoppel order.

The Court has reviewed Exhibit I, which is Plaintiff's "Affidavit of Attorneys (sic) Fees." It appears to include work not narrowly tailored to the fees incurred by Plaintiff in its discovery efforts to find the net worth of vCollect. The Court thereby orders Plaintiff to submit a revised fee petition detailing the fees incurred and how they directly relate to the discovery work Plaintiff conducted after Defendants failed to produce an audited balance sheet. This revised fee petition shall be submitted within 30 days of the date of this Order. Defendants may also submit any objections to the reasonableness of the fee petition within 30 days of the date of the revised fee petition.

**Dated: March 12, 2007**

_____